612 A.2d 549

**Stephen R. POHLIT, Joseph Rusin, and John E. Swarney**

v.

**JOHNSTOWN POLICE AND WIDOWS' PENSION FUND, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided June 22, 1992.

Nicholas Banda, for appellant.

James R. DiFrancesco, for appellees.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Johnstown Police and Widows' Pension Fund Association (Association)[1] appeals from an order of the Court of Common Pleas of Cambria County which ordered the Association to accept the purchase of military service credits for

1. The Association consists of the Chief of Police, the Sergeants of Police, the Captain of Detectives, the Detectives, the Lieutenants of Police, and all patrolmen and other officers attached to the Bureau of Police. The Association elects a President, Vice–President, Secretary and Treasurer. City of Johnstown Ordinance No. 3785, Section 288.02.

retirement purposes from Stephen R. Pohlit (Pohlit), Joseph Rusin (Rusin) and John E. Swarney (Swarney).

Pohlit, Rusin and Swarney are former police officers previously employed by the City of Johnstown. The three officers retired in 1972, 1973, and 1974 respectively, after each having served approximately 24 years on the police force. In 1976, Pohlit and Rusin approached the Johnstown City Council (City Council) and requested permission to purchase prior military service credits for retirement pension purposes pursuant to Section 4302 of the Third Class City Code.[2] That section of the Third Class City Code was enacted in 1970 prior to Pohlit's and Rusin's retirement, by adding a second paragraph as follows:

> *With the approval of council, any member of the police pension fund who is a contributor and who served in the armed forces of the United States* subsequent to September 1, 1940, and who was not a member of the police pension fund prior to such military service, *shall be entitled to have full credit for each year or fraction thereof,* not to exceed five years of such service upon his payment to the police pension fund of an amount equal to that which he would have paid had he been a member during the period for which he desires credit, and his payment to such fund of an additional amount as the equivalent of the contributions of the city on account of such military service. (Emphasis added.)

Because Pohlit and Rusin had contributed to the police pension fund during their years of service and retired from the police force with over four and three years respectively of eligible military service, City Council approved both of their requests. The Association, however, rejected City Council's decision, finding that City Council was without legal authority to approve the requests, and Pohlit and Rusin, being retired, were not contributors to the pension fund at the time they made their requests.

2. Act of June 23, 1949, P.L. 816, *as amended,* 53 P.S. § 39302.

■ On March 12, 1990, fourteen years after being denied benefits by the Association, Pohlit, Rusin and Swarney [3] filed an action in mandamus.[4] They alleged that as contributors to the pension fund, Section 4302 of the Third Class City Code had created vested rights in them to purchase military service credit time to apply to their pensions upon City Council's approval. They further alleged that they had been wrongfully denied that right since the dates of their retirement.

The trial court determined that City Council's approval of Pohlit's and Rusin's applications was approval by resolution of the right to buy back military time, not only by them, but by all former contributors to the pension fund, because there was no reason why City Council could approve some individuals and deny others. It further determined that the Association had a ministerial duty to award pension benefits for military time to all retired police officers, because Section 4302 of the Third Class City Code created a vested right to purchase military time in all police officers who had contributed to the pension fund at one time or another. It reasoned that the purpose of Section 4302 of the Third Class City Code was to recognize a person's prior military service by way of added pension benefits, and to strictly construe the term "contributor" to those individuals who purchased military time prior to their retirement would negate the object of the Code.[5]

The trial court then ordered the Association to accept Pohlit and Rusin's purchase of military service credits for retirement purposes and to readjust their pensions with benefits retroac-

3. Swarney filed the action in mandamus even though he had never approached City Council or the Association to purchase military time based on the Association's failure to recognize Pohlit's and Rusin's right to purchase credit.

4. Mandamus is an extraordinary remedy which is available to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in the Plaintiff, a corresponding duty in the Defendant, and a lack of any other adequate, appropriate and specific remedy. *Frederick v. City of Butler*, 45 Pa.Commonwealth Ct. 621, 405 A.2d 1343 (1979).

5. The trial court also noted that the three police officers had never been told of their purported right to purchase military time while employed by the City of Johnstown, and only discovered their right to do so in 1976.

tive to July 28, 1976, the date the City Council approved their request. It also ordered the Association to accept Swarney's purchase of almost three years of military service credits for retirement purposes and to readjust his pension with benefits retroactive to March 12, 1990, the date the action in mandamus was initiated, because City Council could not reasonably distinguish him from the class to which Pohlit and Rusin belonged. The Association then filed the present appeal.

The issues now before us are whether Section 4302 of the Third Class City Code created vested rights in Pohlit, Rusin and Swarney to buy back their military time for retirement purposes, and whether City Council's approval by resolution of Pohlit's and Rusin's application was approval for all former contributors to the pension fund to purchase military time.

Pursuant to Section 4301 of the Third Class City Code, 53 P.S. § 39301,[6] City Council enacted Ordinance No. 3785, Chapter 288, establishing a police pension fund. Under Chapter 288 of the Ordinance, the Association was given custody of and authority to manage the pension fund, including the authority to determine if specific eligibility requirements were met to award benefits. The General Assembly later enacted Section 4302 of the Third Class City Code to allow City Council, if it desired, to authorize the buy back of military credits by police officers who had served in the military and were contributors to the pension fund. City Council, however, never enacted an ordinance or took any other action providing for a general authorization for the buy back of military time. The only action taken by City Council was the approval of Pohlit's and Rusin's application to purchase military credits for retirement purposes.

 Pohlit, Rusin and Swarney argue that City Council did not have to generally authorize the buy back of military

6. Section 4301 of the Third Class City Code provides that cities shall establish by ordinance a police pension fund to be maintained by an equal and proportionate monthly charge against each member of the police force.... which fund shall at all times be under the direction and control of council, but may be committed to the custody and management of such officers of the city or citizens thereof as designated by council....

credits, because it already had the authority to approve specific applications for the purchase of military time pursuant to the language, "With the approval of Council", found in paragraph two of Section 4302 of the Third Class City Code. However, that language must be read in conjunction with the first paragraph of Section 4302 of the Third Class City Code which provides:

> *Such ordinance* shall prescribe a minimum period of continuous service, not less than twenty years, and, when any minimum age is prescribed, a minimum age of fifty years, after which members of the force may retire from active duty, and such members as are retired shall be subject to service, from time to time, as a police reserve until unfitted for such service, when they may be finally retired by reason of age or disability. (Emphasis added.)

"Such ordinance" refers to the Ordinance establishing the pension fund under Section 4301 of the Third Class City Code, and "With the approval of council" refers to City Council's approval of that Ordinance and the terms under which a pension may be awarded and calculated. While City Council has the authority to generally authorize the purchase of military time, only the Association has the authority to review specific applications for eligibility by police officers who wish to purchase military credits.

■ City Council's approval of only Pohlit's and Rusin's application did not constitute the general authorization the General Assembly envisioned when it authorized the buy back of military time. Even though City Council approved the two applications and did not distinguish between members of the pension fund who were actively contributing and those that were retired, it was not attempting to enact general legislation for a buy back provision. Rather, City Council was merely operating under the mistaken belief that it had the authority to approve specific applications. Because the approval of the two applications did not constitute the enactment of a general ordinance needed to effectuate Section 4302 of the Third Class City Code, and City Council did not have the authority to approve specific applications, no rights to buy back military

time were vested in Pohlit and Rusin who made applications or in a general class of retirees such as Swarney.

Assuming, *arguendo,* that the trial court was correct in determining that approval by City Council of Pohlit's and Rusin's applications became the general authorization for all eligible members of the pension fund to buy back time as the statute mandates, City Council had no power to extend the buy back to Pohlit, Rusin and Swarney, who were no longer active members of the pension fund.

■ Although the trial court determined that the term "contributor" was not limited to individuals currently contributing to the fund, Section 4302 of the Third Class City Code specifically provides that any member of the police pension fund who *is a contributor,* meaning a current contributor, and who served in the armed forces is entitled to have full credit for each year. Had the legislature intended that language to include retired police officers as well, it would have conveyed that meaning by solely using the words *"any member"* of the "police pension fund" without further qualification. While the purpose of Section 4302 of the Third Class City Code is to recognize a police officer's prior military service by providing him with added pension benefits, the language in the statute only authorizes and does not require the municipality to enact an ordinance to allow those active members who are still contributing to the police pension fund and not those officers who have retired, to purchase military credits.

Pohlit, Rusin and Swarney, however, argue that regardless of the wording of the statute, they were entitled to request permission to purchase military credit for retirement purposes, even though their applications for benefits were made after they actually retired. In support of their argument, Pohlit, Rusin and Swarney rely on our Supreme Court's holding in *Buynak v. Wilkes–Barre Police Pension Fund Association, Inc.,* 404 Pa. 491, 173 A.2d 114 (1961).

In *Buynak,* the legislature amended in 1952 the Police Pension Act of 1931 to entitle current contributors to the pension fund payment of a service increment in addition to

their retirement allowance. Buynak, a Wilkes–Barre police officer who contributed to the police pension fund during his 36 years of service, retired in 1959. Following his retirement, the City of Wilkes–Barre passed an ordinance in 1960 amending the Police Pension Act to provide that any contributor to the police pension fund would be entitled to a service increment for each year after the contributor had served the minimum number of years required by ordinance, provided they paid into the retirement fund a monthly sum in addition to their retirement contribution. Buynak, who retired six months prior to the passing of this ordinance, was willing to pay the additional monthly sum and sought to obtain service increments. The pension fund denied his request.

Buynak sued the pension fund for the allotted service increments. The trial court determined that even though Buynak retired before the ordinance was enacted in 1960, he was a contributor to the pension fund in 1952 when the original legislation was passed. The pension fund then appealed to our Supreme Court which affirmed the trial court's decision. Our Supreme Court held that the 1951 Act was self-executing and required no action by the City of Wilkes–Barre (City). Because the City's action was not needed, it could not withhold service increments from contributors or deprive them of their rights given to them by statute. Therefore, the belated action of passing an amendment by the City could not alter, interfere or diminish any rights acquired by Buynak under the statute.

Pohlit's, Rusin's and Swarney's reliance on *Buynak* is misplaced, because, in this case, Section 4302 of the Third Class City Code is not a self-executing statute. Section 4302 of the Third Class City Code only gives City Council *the discretion to pass an ordinance* permitting the buy back of military credits, and does not in its own right provide for the buy back of military credits by any member of the pension fund who is a contributor. Unlike in *Buynak*, where the statute was self-executing, Section 4302 of the Third Class City Code only became effective upon the passage by ordinance of general

authorization for all contributing police officers to buy back military time.

Consequently, because Section 4302 of the Third Class City Code only gives to City Council the right to extend the buy back of pension benefits to police officers who are presently contributing to the pension fund, even if City Council had enacted a general ordinance it could only do so for active members, not retirees like Pohlit, Rusin and Swarney who were no longer contributing to the pension fund.[7]

Accordingly, the decision of the trial court is reversed.[8]

## ORDER

AND NOW, this 22nd day of June, 1992, the order of the Court of Common Pleas of Cambria County dated August 7, 1991, is reversed.

7. Additionally, even though Pohlit, Rusin and Swarney argue that they were never informed of their right to apply for the purchase of credits while they were still employed as police officers and contributing to the fund, they have not provided us with any supporting evidence that the Association was required to do so.

8. Because we have determined that Pohlit, Rusin and Swarney were not entitled to purchase military credits, we need not reach the issues of laches or statute of limitations.